UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

RANDY THIELMAN, :
:
    Plaintiff, :
:
v. : CASE NO. 3:99CV2505(DFM)
:
JOHN ARMSTRONG ET AL., :
:
    Defendants. :

FINDINGS OF FACT AND CONCLUSIONS OF LAW

    The plaintiff, Randy Thielman, formerly an inmate at Northern Correctional Institution ("Northern") in Somers, Connecticut, commenced this § 1983 action.[1] He names as defendants the Commissioner of the State of Connecticut Department of Correction John Armstrong, Warden Giovanny Gomez, Warden Larry Myers, and Dr. Patrick Hynes. The plaintiff alleges that Northern's policy requiring that inmates in Phase I of the Administrative Segregation Program remain in full restraints during recreation deprived him of the opportunity to exercise in violation of the Eighth Amendment. He seeks compensatory and punitive damages.

    Discovery ended on April 1, 2001. (Doc. #25.) No dispositive motions were filed. On April 22, 23, and 26, 2002, the court conducted a bench trial.[2] The following constitutes the Findings

---

[1] On February 2, 2001, the plaintiff was transferred to MacDougall Correctional Institution where he is currently incarcerated.

[2] On December 17, 2001, the parties consented to trial before the undersigned pursuant to 28 U.S.C. § 636(c). (Doc. #32.)

of Fact and Conclusions of Law of this court pursuant to Rule 52 of the Federal Rules of Civil Procedure.

I.  Finding of Facts

On June 27, 1997, the plaintiff entered Northern. Northern houses the most dangerous of Connecticut's prison population. It is a special management institution for inmates classified as Level 5 Administrative Segregation status and Level 4 Chronic Discipline Status. On July 25, 1997, after the plaintiff failed a program at a less restrictive Connecticut prison,[3] he entered Northern's Administrative Segregation Program.

The Administrative Segregation Program is a unique management program for inmates who cannot safely be housed in the general prison population. It is a three phase program intended to develop skills which prepare inmates for release into the general prison population. An inmate must successfully progress through each of the three phases before he is eligible to leave the program. Inmates who do not succeed at any phase can be returned to a prior phase. Privileges, movement, and restraint status change as the inmate progresses or regresses through the phases. The average length of stay in the Administrative Segregation Program is about 17 months.

Upon being placed in Administrative Segregation, each inmate

---

[3]The plaintiff was a Closed Custody Program failure at the Garner Correctional Institution in Newtown, Connecticut.

2

is assigned to Phase I. In Phase I of the Administrative Segregation Program, the inmate's movement is significantly limited. He is permitted 3 showers a week, one phone call a week and one hour of recreation 5 days a week.

For Phase I inmates at Northern, there are both indoor and outdoor recreational areas. Inmates recreate daily, but alternate between the inside and outside areas. The outside recreational area is a five sided concrete walled area with an open grated ceiling (often referred to as a "cage"). Inmates recreate alone and in full restraints. Inmates' hands are handcuffed behind their backs and their legs are shackled. A metal tether connects the handcuffs and ankle shackles.

When Northern began the Administrative Segregation Program, Phase I inmates were not kept in full restraints during recreation. Over time, however, prison officials realized that correctional officers were exposed to danger when moving prisoners between their cells and the recreation area. There were a number of assaults when restraints were being applied and removed on the way to and from recreation. Because of the occurrence of assaults, prison officials instituted a policy requiring Phase I inmates to remain in restraints during recreation.

In July 1997, the plaintiff entered Phase I. Although he progressed into Phase II, the plaintiff was repeatedly disciplined and returned to Phase I. On January 7, 1998, the plaintiff moved

3

into Phase II but regressed to Phase I on February 2, 1998. On May 5, 1998, he again progressed to Phase II but was moved back to Phase I on June 8, 1998. On December 2, 1998, the plaintiff progressed to Phase II where he stayed until March 10, 1999, when he regressed back to Phase I. He remained in Phase I until August 5, 1999,[4] when he progressed into Phase II.

The Department of Correction has a multi-level administrative grievance procedure. Inmates are advised that the Inmate Grievance Procedure is an administrative remedy and that they may be required by the courts to have exhausted this remedy before commencing a lawsuit. Administrative Directive 9.6 ¶10.

According to the Inmate Grievance Procedure, an inmate must file a grievance, in writing, on the Inmate Grievance Form "within 30 days of the occurrence or discovery of the cause of the grievance."[5] Id. The Grievance Coordinator maintains a file and grievance log for each level of grievance. Id. at ¶20. The grievance is reviewed for compliance with the Inmate Grievance Procedure and investigated if the grievance is accepted. The Department of Correction is required to respond in writing within 30 days. The inmate is notified of the disposition and is provided

---

[4] The record is unclear whether the date is August 3 or 5, 1999.

[5] The Inmate Grievance Form states: "Remember: Your grievance must be filed within 30 days of the cause of the grievance or within 30 days of the date you became aware of the cause."

4

an appeal form and directions for appealing. <u>Id.</u> at ¶15. An inmate must appeal within 5 calendar days of receiving the decision. <u>Id.</u> at ¶16. If a timely response to a Level 1 grievance is not received, an inmate may appeal to Level 2 one day after the authorized time limit expires. <u>Id.</u>

On September 24 and 29, 1999, more two years after he entered the Administrative Segregation Program, the plaintiff filed grievances about recreation in Phase I. The plaintiff was not in Phase I when he filed the grievances; he had not been in Phase I for over thirty days, since August 3 or 5, 1999. Nonetheless, he complained that when he was in Phase I, he was kept in full restraints during his recreation hour and that the restraints prevented him from exercising. Pl's Exs. 1, 2. The prison has no record of receiving these grievances. Consequently, they did not respond.

On October 25, 1999, the plaintiff was transferred to Wallens Ridge State Prison in Virginia. He was notified of the transfer that morning. Once in Virginia, the plaintiff did not pursue the grievances he filed in Connecticut about Northern's restraint policy. While incarcerated in Wallens Ridge, on December 20, 1999, the plaintiff filed this lawsuit.[6] He alleges that the restraint policy deprived him of the right to exercise because of the severe

---

[6] The plaintiff filed the complaint <u>pro se</u> and in July 2001, counsel appeared on his behalf. <u>See</u> doc. #29.

5

limitation of movement while fully restrained. In addition, he alleges that he was unable to exercise in his cell because it was small, hot, and the poor ventilation triggered his asthma.

On March 17, 2000, the plaintiff was transferred back to Northern. He was placed in Phase I for a 30 day evaluation period.[7] Because the plaintiff qualified for Phase III before he was transferred to Virginia, he progressed to Phase III on April 11, 2000, bypassing Phase II altogether.

On June 15, 2000, about six months after commencing this litigation, the plaintiff filed another grievance. He complained that he had never a received a response to his September 24, 1999 grievance about the Phase I recreation restraint policy. When he filed the June 2000 grievance, the plaintiff was in Phase III, where the restraint policy did not apply. He had not been in Phase I for over thirty days, since April 10, 2000. Although he was not then subjected to the restraint policy, as relief for his grievance, the plaintiff said he "wanted to be able to go to the one hour exercise period without the restraints and have the Institution policy changed." The grievance was logged and processed. On July 18, 2000, it was denied. The response said the restraint policy for Phase I inmates was in accordance with Administrative Directive 9.4. The plaintiff administratively

---

[7]According to Northern officials, this was standard policy for prisoners returning from out-of-state facilities.

appealed. The appeal was denied.

II. Conclusions of Law

A. Exhaustion of Administrative Remedies

The court first addresses the defendants' claim that the plaintiff failed to exhaust his administrative remedies.[8]

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), provides: "No action shall be brought with respect to prison conditions under section 1983 of this title . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

"[T]he court must not proceed to render a substantive decision until it has first considered § 1997e(a). . . . The statute can function properly only if the judge resolves disputes about its application before turning to any other issue in the suit." Perez v. Wisconsin Dep't of Corrections, 182 F.3d 532, 536 (7th Cir. 1999). See Woods v. Goord, No. 01 CIV. 3255 (SAS), 2002 WL 731691, at *11 (S.D.N.Y. Apr. 23, 2002) ("Before reaching the merits of [the plaintiff's] claims, it is necessary to examine whether plaintiff has exhausted prison remedies for these complaints.")

---

[8]Long before trial, the defendants could have filed a dispositive motion arguing that the plaintiff failed to exhaust his administrative remedies. The deadline for filing a dispositive motion was May 1, 2001. See doc. #25. Nearly a year after the deadline, and months after trial had been scheduled, the defendants moved for permission to file a motion for summary judgment. They offered no explanation for their tardy request. The court denied the defendants' motion as untimely and proceeded to trial as scheduled. (Doc. #41.)

7

The Supreme Court recently discussed the PLRA's exhaustion requirement in Porter v. Nussle, ___ U.S. ___, 122 S.Ct. 983 (2002):

> In 1995, as part of the PLRA, Congress invigorated the exhaustion prescription. . . .
> The current exhaustion provision differs markedly from its predecessor. Once within the discretion of the district court, exhaustion in cases covered by § 1997e(a) is now mandatory. . . . All 'available' remedies must now be exhausted; those remedies need not meet federal standards, nor must they be 'plain, speedy, and effective.' . . . Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit.

Id. at 988 (citations omitted). Under the amendment, dismissal on the basis of failure to exhaust is now mandatory, whereas it was once within the discretion of the district court. Id.

The Second Circuit has recognized that the "plain language of § 1997e(a)" mandates exhaustion prior to commencement of a § 1983 action. Neal v. Goord, 267 F.3d 116, 121 (2d Cir. 2001). Section 1997e(a) "requires exhaustion of available administrative remedies before inmate-plaintiffs may bring their federal claims to court at all. . . . Subsequent exhaustion after suit is filed is therefore insufficient. . . . [G]rievances must now be fully pursued prior to filing a complaint in federal court." Id. See also Nyhuis v. Reno, 204 F.3d 65, 73 (3rd Cir. 2000) (because § 1997e(a) "specifically mandates that inmate-plaintiffs exhaust their available administrative," it eliminates discretion); Alexander v. Hawk, 159 F.3d 1321, 1326 (11th Cir. 1998) ("[E]xhaustion is now a pre-condition to suit. . . . Mandatory exhaustion is not satisfied

by a judicial conclusion that the requirement need not apply.").

The Inmate Grievance Procedure requires that an inmate file a grievance within 30 days of the occurrence or of the discovery of the cause of the grievance. There is no question that the plaintiff did not file his grievance within 30 days. According to the uncontroverted testimony at trial, the plaintiff was transferred out of Phase I and into Phase II on either August 3 or 5, 1999. Regardless of which date is used, August 3 or August 5, the September 24 and 29, 1999 grievances are dated more than 30 days after the plaintiff was in Phase I and subjected to the conditions he grieved.[9] Therefore the grievances do not comply with the requirement that they be filed within 30 days "of the occurrence or of the discovery of the cause of the grievance."[10]

The plaintiff contends that he exhausted all "available" prison grievance procedures because the DOC did not have a provision for filing late grievances. He relies on an unpublished out-of-district opinion, Hannon v. Angelone, No. 7:00-cv-281, slip. op. at 6 (W.D.Va. Dec. 15, 2000). The plaintiff argues that

---

[9]The record reflects that the plaintiff had ample opportunity to file a formal grievance within the required time frame. He was in Phase I on four occasions for a total of approximately 18 months prior to his transfer to Virginia on October 25, 1999: June 27, 1997 - January 6, 1998, February 2, 1998 - May 4, 1998, June 8, 1998 - December 1, 1998, and March 10, 1999 - August 3 or August 5, 1999.

[10]The plaintiff's filing of another grievance in June 2000 after he initiated this lawsuit will not save the plaintiff's case. The PLRA does not permit the prisoner plaintiff to file a lawsuit first and exhaust remedies later. See Neal v. Goord, 267 F.3d 116, 121 (2d Cir. 2001).

because the time limit in which he was required to file a grievance had expired, he had no remaining "available" remedies to exhaust. The reasoning is circular and the court is unpersuaded. See Ivan v. Russell, No. 98 C 6396, 2002 WL 664065, at *2 (N.D.Ill. Apr. 23, 2002) (finding plaintiff's reasoning that there was no available remedy because he filed an untimely grievance "logically erroneous").

To exhaust administrative remedies, a person must follow the rules governing filing and prosecution of a claim -- including time limits. See Pozo v. McCaughtry, 286 F.3d 1022, 1025 (7th Cir. 2002) (citing Artuz v. Bennett, 531 U.S. 4, 9-10 & n. 2 (2000)). "To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." Pozo, 286 F.3d at 1025. Accord Hakeem v. Snyder, No. 00 C 50287, 2002 WL 1308648, at *1 (N.D.Ill. June 13, 2002) (dismissing prisoner claim where he filed untimely grievance).

Dismissal is only result the court may reach. The court is constrained from reaching the merits of the plaintiff's constitutional claim by the clear language of § 1997e(a). Nyhuis v. Reno, 204 F.3d 65, 73 (3rd Cir. 2000)(affirming district court's order dismissing the action and holding that "[s]ince the magistrate judge, having properly dismissed the action for failure to exhaust, should not have reached the merits of [the plaintiff's] claim, that portion of the district court's decision will be vacated.") The court is "not prepared to read the amended language

10

in § 1997e(a) as meaning anything other than what it says -- i.e., that no action shall be brought in federal court until such administrative remedies as are available have been exhausted." Id. at 78. See Farrell v. Addison, No. 01-7094, 01-7127, 2002 WL 568191, at *1 (10th Cir. Apr. 17, 2002) ("'Where Congress specifically mandates,' the Supreme Court has said, 'exhaustion is required.' . . . We cannot, in the face of such a clear directive, weigh the fairness of the exhaustion requirement or entertain exemptions from its reach.")(citation omitted.)

III. Conclusion

Accordingly, the plaintiff's claim is dismissed without prejudice for failure to exhaust his administrative remedies.

SO ORDERED at Hartford, Connecticut this 25th day of June, 2002.

Donna F. Martinez
United States Magistrate Judge

11